

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## NO. PD-0467-23

---

### JEFFREY MERRITT MCCUMBER, JR., Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE NINTH COURT OF APPEALS POLK COUNTY

---

**WALKER, J., filed a dissenting opinion in which HERVEY, J., joined.**

### <u>DISSENTING OPINION</u>

Before Appellant's trial for continuous sexual abuse, the outcry witness, Alyssa Crawford, could not be located by the State to testify. After jury selection, the State learned that Crawford had moved to Colorado renting under her friend's name. The trial court held a hearing to determine whether to grant the State's request to allow Crawford to testify without being physically present in court.

During the hearing, Crawford testified via Zoom that she moved to Colorado a month or two after reporting the victim's outcry to police. Crawford claimed that she moved because

Appellant's family broke into her home three times, and "people were starting to drive by and say that we were fixing to die," and therefore she was afraid to testify in person. She also had her own court date later that day in Colorado, and her husband required continuous care due to his fractured spine. She "asked around" to try to locate someone to care for her husband, but she could not find an alternate caregiver. Crawford stated that she did not trust that the district attorney's office would protect her if she returned to testify. While testifying via Zoom, Crawford was "running around her yard; there [was] background noise, [and the trial judge] had to admonish her husband several times to be quiet." The trial judge described the overall quality of the hearing as "atrocious" and "ridiculous."

Ultimately, however, the trial court found that "[it did not] have a problem with allowing the witness to appear remotely[.]" "[T]o that end, the [trial] Court [found] that there is a necessity shown." Appellant renewed his confrontation objection when the State called Crawford as a witness. The trial court overruled the objection by stating "We'll find there is a necessity for it."

The court of appeals held that the trial court's findings were conclusory and not case-specific. It found that none of the offered reasons for Crawford's absence supported a conclusion that "a compelling public policy interest warrant[ed] allowing Crawford to testify remotely." It reversed the trial court's judgment and remanded for a new trial.

The Court today concludes that the trial court's necessity finding was sufficient and justified by the witness's fear of retaliation. I disagree. I would affirm the court of appeals because the trial court did not make the required case-specific findings, and even if it did, Crawford's testimony was not sufficient to justify her testifying remotely. Therefore, I respectfully dissent.

## I — The Trial Court Did Not Make the Required Findings.

The Sixth Amendment guarantees a criminal defendant the right to confront adverse

witnesses, but it does not grant an absolute right to face-to-face confrontation. *Maryland v. Craig*, 497 U.S. 836, 844 (1990); U.S. Const. amend. VI. Face-to-face confrontation may be dispensed with only when necessary to further an important public policy and when the reliability of the testimony is otherwise assured. *Craig*, 497 U.S. at 850. The trial court must make a case-specific finding of necessity: it "must hear evidence and determine whether [dispensing with face-to-face confrontation] is necessary to protect the welfare of the particular . . . witness who seeks to testify." *Id.* at 855. This Court emphasized in *Haggard* the trial court's failure to hear evidence and the lack of case-specific finding. *Haggard v. State*, 612 S.W.3d 318, 327 (Tex. Crim. App. 2020) (general finding that witness should be allowed to testify remotely was insufficient).

Here, Crawford offered three excuses for her absence. The trial court failed to specify which reason it relied on and why any of her excuses warranted dispensing with the defendant's right to face-to-face confrontation. The trial court's statements—"I don't have a problem with allowing the witness to appear remotely" and "there is a necessity shown"—are not sufficient case-specific findings to demonstrate that it was necessary for Crawford to testify remotely. Further, I hesitate to rely on the trial court's credibility determination of Crawford based on the poor quality of the hearing. How much deference can be afforded to the trial court's evaluation of Crawford when the conditions of her hearing testimony were described as "atrocious" and "ridiculous"?

## II — The Witness's Subjective Fear Did Not Justify Remote Testimony.

Even if the trial court had made the required findings under *Craig* and *Haggard*, I would find that it abused its discretion because Crawford's cited reasons for her absence were not sufficient to justify dispensing with Appellant's right to confrontation.

Face-to-face confrontation may not "easily be dispensed with." *Craig*, 497 U.S. at 850. Generally, it has been dispensed with in cases involving child and adult victims. *See Marx v. State*,

987 S.W.2d 577, 580 (Tex. Crim. App. 1999) (witnesses testifying by two-way closed circuit television were children the defendant allegedly sexually assaulted); *Lively v. State*, 968 S.W.2d 363, 367 (Tex. Crim. App. 1998) (witness testifying by videotape was child victim the defendant allegedly sexually assaulted); *Ex parte Taylor*, 957 S.W.2d 43, 46–47 (Tex. Crim. App. 1997) (in parole revocation hearing, witness testifying outside parolee's presence was parolee's adult wife, victim of domestic abuse); *Hightower v. State*, 822 S.W.2d 48, 52–53 (Tex. Crim. App. 1991) (witness testifying by closed circuit television was child victim the defendant allegedly kidnapped and with whom committed indecency).

In contrast, dispensing with face-to-face confrontation for testimony from an adult witness is a different scenario. *See Taylor*, 957 S.W.2d at 46 ("When the victim-witness is an adult, the state's need to protect the witness from trauma is certainly not as great as for the child-witness."). In *Romero v. State*, this Court found that allowing an adult witness to testify while in disguise during a trial for aggravated assault violated the Confrontation Clause. *Romero v. State*, 173 S.W.3d 502, 506 (Tex. Crim. App. 2005). The *Romero* Court explained:

> [S]ome degree of trauma is to be expected in face-to-face confrontations. Calming an *adult* witness's fears is quite a different thing from protecting a child victim from serious emotional trauma. Adults are generally considered to be made of sterner stuff and capable of looking after their own psychological well-being. And the difference is especially great when the adult witness is not the victim[.]

*Id.* (emphasis in original).

In Appellant's case, Crawford was not the victim, nor was she a child when the offense occurred. She was more than capable of confronting Appellant face-to-face in the courtroom.

The primary reason for Crawford needing to testify remotely was her fear of Appellant's family and friends. She claimed that they had threatened her and broken into her home three separate times. However, as the court of appeals noted, Crawford could not identify who had

threatened her—she only testified that "[i]t was a number of different people"—and there is no evidence that she reported the threats or break-ins to law enforcement. Crawford also did not testify that Appellant induced his family and friends to threaten Crawford, and she did not testify that simply being in Appellant's presence caused her fear of trauma. *See Craig*, 497 U.S. at 856 (explaining that "[d]enial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the *presence of the defendant* that causes the trauma.") (emphasis added). There was no evidence linking Appellant to any of the threats or Crawford's subjective fear.

While I believe threats of retaliation may require a witness to testify remotely in some instances, Crawford's unsupported testimony of her subjective fear did not serve to outweigh Appellant's right to face-to-face confrontation. The trial was a classic he-said-she-said case, and because Crawford was the outcry witness, it was vital that the jury properly assess her credibility in the defendant's presence. *See Craig*, 497 U.S. at 845–46 (in-person examination and cross-examination afford the accused the opportunity to compel the witness to face the jury so that it may judge the witness's credibility for itself). Were we to dispense with face-to-face confrontation for every adult witness who expressed an unsubstantiated, subjective belief of fear, then there would rarely be in person testimony. Therefore, I would find that the trial court abused its discretion in permitting Crawford to testify remotely based on her fear.

### III — The Witness's Other Reasons for Testifying Remotely Are Also Not Sufficient.

The Court does not address the two other reasons Crawford gave for not returning to testify, but I will address them to explain why they are also not sufficient to justify her remote testimony. Crawford's other excuses for her absence are merely inconveniences, which this Court has recognized as insufficient. In *Haggard v. State*, we found that a witness's personal and economic

reasons were insufficient to dispense with face-to-face confrontation for testimony from an adult witness. *Haggard*, 612 S.W.3d at 328. The witness never testified that traveling to Texas would cause an undue financial burden or that she was incapable of making the trip. *Id.* at 324. We reasoned that while traveling to testify in court can be difficult, "the right to physical, face-to-face confrontation lies at the core of the Confrontation Clause, and it cannot be so readily dispensed with based on the mere inconvenience to a witness." *Id.* at 328.

Crawford's second reason for not returning to testify was that she was her husband's caregiver because he had a broken back. However, as the court of appeals noted, nothing prevented Crawford herself from traveling to testify. She did not have any health issues or financial barriers that would prevent her from traveling. Crawford stated that she "asked around" to find someone to care for him, but the record is silent as to what those efforts entailed. Crawford's other reason for not testifying in person was that she had a scheduled court appearance in Colorado that afternoon. The State did not develop the record as to whether the court appearance could be rescheduled to another date. Moreover, just because the State did not locate Crawford and make earlier arrangements does not mean that Appellant should lose his right to confrontation. I do not think it is an important public policy to allow the State to procure a witness's remote testimony when it had sufficient time to make arrangements with the witness, and the witness was available to testify. "Not only is that scenario far afield from *Craig*, such an exception could be easily abused." *Craig*, 497 U.S. at 852–53.

## IV — Conclusion

I would affirm the judgment of the court of appeals. The law requires that the trial court make individualized findings that dispensing with face-to-face confrontation was necessary to further an important public policy, and the trial court did not do that. Even if those were findings

were made, the trial court still would have abused its discretion as Crawford's cited reasons for her absence were insufficient to outweigh Appellant's right to confrontation. Therefore, I respectfully dissent.

Delivered: June 19, 2024
Publish